## LITTLE and another *against* The Lessee of DELANCEY.

### IN ERROR.

1812.

*Chambersburg,*
*Monday,*
Oct. 5.

A return to a *fi. fa.* "levied on "grain, house-"hold furniture "&c. (describ-"ed) and left at "the plaintiff's "risk," is not evidence that the judgment was completely satisfied, so as to make an *alias* for the residue void.

A general return of "levied "on goods as "per inven-"tory," does not, by the practice in *Pennsylvania,* discharge the defendant, and make the sheriff liable for the whole debt. He is liable only for the value of the goods upon which a levy was made, or might have been made; and on his paying the nett sales, an *alias* goes for the residue, without application to the court.

A purchaser at sheriff's sale, cannot give parol evidence of a deed by which the title was conveyed to the defendant in the execution, unless he lays the usual ground for secondary evidence. He stands as to proof of title, on the same footing as other purchasers.

THIS was an ejectment in the Common Pleas of *Franklin* county.

Upon the trial of the cause, the plaintiff gave in evidence 1st, an application of the 16th of *May* 1768, and a survey on the 8th of *November* 1786, in the name of *Barbara Zantzinger,* who was the step-daughter of *Charles M'Cormick,* and who at the time of the application resided in his family, and was about fourteen years of age. 2d, The record of a judgment in *Cumberland* county, by *George Brown* against *Charles M'Cormick,* on the 26th of *January* 1770. On this judgment, a *fi. fa.* issued to *April* term 1770, to which the sheriff returned "levied on grain in the barn, and grain in "the ground, and on sundry articles of household and kitchen "furniture (particularly specified) and left at the risque of "the plaintiff," but the amount of the levy was not specified.

The plaintiff then offered in evidence an *alias fi. fa.* for the residue to *October* term 1797, returned "not levied;" and a *pluries fi. fa.* to *April* 1798, under which the land above mentioned was condemned, and afterwards sold to the lessor of the plaintiff in *January* 1799. To this evidence the defendants objected, but it was admitted by the Court, and an exception taken.

He further offered a witness to prove that he had seen in the hands of *Charles M'Cormick,* between 1770 and 1773, a release from *William Morrow* and *Barbara* his wife, formerly *Barbara Zantzinger,* to the said *Charles M'Cormick,* for the lands in question, acknowledged by the parties before a justice of the peace for the county. The defendants also objected to this evidence; but it was admitted by the Court, who sealed a bill of exceptions.

*Crawford* and *J. Riddle* for the plaintiffs in error.

*First* Exception. Until the levy made on the first *fi. fa.*

is disposed of, it operates as an extinguishment of the debt. If the sheriff take goods in execution by virtue of a *fi. fa.*, whether he sells them or not, yet the defendant may plead that taking in his discharge, and shall not be liable to a second execution. 2 *Bac.* 720. *Execution D.* A return that "he had seized goods to the value of the debt, and that "they remained in his hands *pro defectu emptorum*," is a discharge of the judgment. *Clerk* v. *Withers* (*a*). The plaintiff must look to the sheriff, not to the defendant, *Rook* v. *Wilmot* (*b*). *Atkinson* v. *Atkinson* (*c*). In the present case the levy is to an indefinite amount, which must be presumed until the contrary is shewn, to equal the debt; and though left in the defendants' hands, yet by the levy the property vested in the sheriff for the plaintiff's use.

*Second* Exception. No parol proof of the contents of a deed can be received, until it is shewn to be lost, and that exertions have been made to find it, by searching for it, and by calling upon those to produce it, in whose possession it is likely to be. *Peake's Ev.* 96, 97. A purchaser at sheriff's sale is bound to look to his title, and to see that there is an unsatisfied judgment against the person, in whom the title is. He is upon a common footing with others as to proof of title, at least as to the deduction of it to the person as whose property the land is sold. Here there was no examination of the recorder's office, no call upon the defendants, no evidence that they came into possession under *M'Cormick* subsequent to the sale. The case of *Edgar's Lessee* v. *Robinson* (*d*), if correctly stated, cannot be law. It is a *Nisi Prius* case only, and intitled to no more weight than is due to the private opinions of the judges who tried that cause. It is full of danger to permit a purchaser at sheriff's sale to trace title to the defendant, by parol testimony, without laying a ground for secondary evidence.

*Watts* and *Duncan* contra, answered to the

*First* Exception. That if the *fi. fa.* was irregular, still the purchaser at sheriff's sale was intitled to give it in evidence, because he holds the land free from this objection. *Jeanes* v. *Wilkins* (*e*). It was the duty of the defendant in the exe-

1812.

LITTLE
et al.
*v.*
Lessee of
DELANCEY.

(*a*) 2 *Ld. Ray.* 1072.      (*c*) *Cro. Eliz.* 391.      (*e*) 1 *Ves.* 195.
(*b*) *Cro. Eliz.* 209.        (*d*) 4 *Dall.* 132.

cution, or those holding the land under him, to apply to the Court for relief. But there is nothing to shew even irregularity. The goods levied, were left with the defendant *M'Cormick*, as is frequently done in *Pennsylvania*, at the risk of the plaintiff; and under such a return it is impossible for the defendant to say he was discharged, and the sheriff liable. If there were any fraud between him and the purchaser at sheriff's sale, to cut out intervening rights, that would alter the case; but this only shews that the record of the *alias* and *pluries fi. fa.* was not conclusive; if it was evidence 'for any purpose, the Court were right in admitting it. The present plaintiffs in error, must have known of the levy and inquest; it was their duty, if any thing was wrong, to apply to the Court; they cannot, after omitting to do this, prevent a *bona fide* purchaser at sheriff's sale, from claiming the benefit of his purchase.

*Second* Exception. The case of a purchaser at sheriff's sale, is peculiar. He buys generally against the will of the defendant, who has the title deeds, and who cannot be compelled to give them up. He ought not to be held to the necessity of producing them, or even of proving their loss; for he does not know in what direction to prosecute an inquiry for them. The law has been accordingly held in *Edgar's Lessee* v. *Robinson* (a), by two judges of this Court, that parol evidence may be given of a deed conveying the land to the defendant in the execution, without calling upon even the persons in possession to produce it. In addition to this, the present title originated in a mere location, for which the name of *Barbara Zantzinger*, then an infant of fourteen years, must have been used for *M'Cormick's* benefit. The estate was not a legal one, nor was it an equitable one. It was a non-descript. It is sufficient in such cases to prove that the name of the applicant was used for the benefit of a third person; and this may be proved by parol. So may that which is equivalent, be proved in the same way, that the person whose name was used, released to the owner in possession.

TILGHMAN C. J. after stating the case, and the exceptions to evidence, delivered his opinion as follows.

(a) 4 *Dall.* 132.

*First.* The reason urged against the admission in evidence of the proceedings subsequent to the first execution is, that the sheriff having returned the first *fi. fa.* levied, without specifying to what amount, it must be taken for a levy to the full amount of the judgment, and thus the judgment was satisfied. This reason does not appear to me to be conclusive. Although there was a levy, there was no sale; and we know very well that it has been a common practice to suffer the property to remain in the hands of the defendant after a levy. There is no entry on the record shewing satisfaction of the judgment, nor can we suppose that it was satisfied, when the Court suffered subsequent executions to be issued. If these executions were improperly issued, the Court should have been applied to, and they would have given redress on motion. An inquest having been held, and the land condemned, we must suppose that *M'Cormick* and those who were in possession had notice. At any rate I can see nothing on the record authorizing this Court to say, that the proceedings under which the land was sold, were absolutely void; and if not void, it was proper that they should be read in evidence. The effect of them was matter for the consideration of the Court and jury. If there was fraud in the case it was competent to the defendant to shew it. I am of opinion that the Court below were right in admitting this evidence.

*Second.* The second point is of very considerable importance, as it embraces a broad principle by which real property to a great amount may be affected. It has been contended by the counsel for the plaintiff, that inasmuch as *John Delancey* purchased the land of *M'Cormick* at a sheriff's sale, he has a right to give parol evidence of a deed by which title was deduced to *M'Cormick*, without shewing that any steps have been taken to come at the deed, or giving any evidence of its loss, merely because they are not intitled to the possession of it. If this be true to the extent contended for, it is an alarming circumstance to land holders in general; because executions are often levied on claims which the defendants in the execution have to land in the possession of others; and thus the door will be opened for the admission of a dangerous kind of testimony in deducing titles to land. It does not appear in the present case that *M'Cormick* was in possession at the time of the judgment and sale, or that he *ever* was in

possession, or that the defendants derive their title under him. When the purchaser at sheriff's sale has to bring his ejectment against the person whose land was taken in execution, or any person coming into possession under him, he need do no more than shew the judgment and proceedings under it. But if the suit is against a stranger, the title must be made out. The argument of the plaintiff's counsel is founded on the assumption that the purchaser at a sheriff's sale is not intitled to the title deeds, and that the law which compels no one to do useless things, dispenses with all obligation even to apply to the man who has the deeds in possession, and to try to obtain them. That those persons whose lands are sold by the sheriff, often withhold the title papers, I can readily believe; but that they *always* do so, I will not allow, and I am sure they *never ought* to do it, because the land having been sold by authority of law, the title papers ought to be delivered to the purchaser. It is the duty of every one who purchases of the sheriff to look to the title. If the title is afterwards brought in question, and deeds are wanted under which it is deduced, I will not say at present, because there is no occasion, what steps are necessary to be taken in order to let in parol evidence; but it may be laid down in general, that before such evidence is admitted, the Court must be satisfied, that all reasonable endeavours have been used. In the present instance the deed is said to have been acknowledged, and yet not even the trouble of searching the recorder's office appears to have been taken; although the acknowledgment must be supposed to have been made for the purpose of having it recorded. It must be supposed also that the plaintiff knew of this deed, because his own witness testified that he had seen it. At all events, if he looked into the title at all, he must have seen that the land was taken up in the name of *Barbara Zantzinger*, and it was his business to inquire how it went from her. He should have inquired of the family of *M'Cormick;* and for aught that appears, the deed might have been obtained, or if it was lost, evidence of the loss procured. I should not have thought it necessary to say so much on the subject, had it not been for the case of *Edgar's Lessee* v. *Robinson*, reported in 4 *Dall.* 132, and decided by two judges for whose memory I have the highest respect. The decision was at *Nisi Prius*,

and for aught that appears, with very little argument or consideration. The report is short, and I am satisfied that the reporter was not present at the trial, or the case would have been stated with more clearness and precision. The ejectment was against *James Robinson* junior, and *William Robinson.* The plaintiff claimed under a judgment and execution against *James Robinson* senior, (uncle of the defendants) who was in possession at the time of the judgment, and against whom a former ejectment had been brought, but how it was ended does not appear. Probably he was dead. Neither does it appear whether the defendants claimed under their uncle. If they did, they would have been estopped from controverting his title. The Court permitted parol evidence to be given of a deed by which the land in controversy was conveyed by *James Rowland* to *James Robinson* the uncle. The Court said, " that there was no occasion to give notice " to the defendants to produce the deed, because they were " not *parties to it.*" If the uncle was dead and the defendants claimed under him, it was to be presumed that the deed was in their possession, and therefore notice ought to have been given to produce it, although they were not parties. And what renders the case more obscure is, that the Court afterwards seem to suppose that the defendants *had the deed in their possession,* for they say, " there is no way of getting " at the title but by parol evidence, if the defendant in an " action chooses under such circumstances to *conceal* the " muniments of the estate." Upon the whole, there appears to have been something particular in the circumstances of that case, under which it might have been proper to admit parol evidence, although it does not clearly appear what those circumstances were. At all events it is not a case which can be set up as a general rule, establishing the principle contended for by the plaintiff's counsel in this cause. I am of opinion, that the parol evidence ought not to have been admitted, and that the judgment should be reversed, and a *venire facias de novo* awarded.

YEATES J. Two errors have been assigned in the record of this case. 1st, That the proceedings upon the judgment entered by *George Brown* against *Charles M'Cormick*, sub-

1812.

LITTLE
et al.
*v.*
Lessee of
DELANCEY.

sequent to the *fieri facias*, returned " levied on certain goods," ought not to have been received in evidence.

2d, That the contents of a deed poll from *William Morrow* and *Barbara* his wife to *Charles M'Cormick*, were proved by the oath of *Owen Aston*, without having proved any efforts used to procure the original, or shewing that it was destroyed or lost.

Upon the first question I cannot bring myself to entertain a doubt. A *pluries fi. fa.* was offered in evidence for the residue of the sum recovered by *Brown* against *M'Cormick*, upon which the lands in controversy were levied, as *M'Cormick's* property, and afterwards sold by the sheriff. No objection is made to the manner in which these executions were certified, and the levy was made on the lands mentioned in the ejectment. Clearly they were competent evidence to go to the jury; their legal effect and operation were proper subjects for the Court's decision afterwards.

I deem it proper however to express my ideas, upon the particular objection stated by the counsel of the plaintiffs in error, as to the effect of the testimony. They have contended that under a general return of goods levied, whereby it does not clearly appear that they were insufficient to pay the debt and costs, that the defendant in the execution is discharged from the debt, and the remedy of the creditor is against the sheriff alone; and they have therefore assimilated the present case to one where the execution has issued without a judgment. The former part of the observation may be true as it applies to the practice of the *English* courts; but it never was held so here. In few instances indeed, in this country before the *American* revolution, were goods sold before the return of the *fi. fa.*, and in fewer still were goods levied on, appraised. If the sheriff paid the fair amount of the sales, after deducting the costs, to the plaintiff, it was all that was required of him; and the plaintiff's attorney, after giving credit for the sum paid, issued an *alias fi. fa.* or *ca. sa.* on the judgment for the residue, without further application to the court, as a matter of course. The great *desideratum* was to procure the sheriff to account for the goods he had seized in execution, which was no easy thing to effect in many cases. But I have never heard it supposed, that he was responsible beyond the amount of

the personal estate, which he either actually levied, or might have levied, upon the *fieri facias*.

Admitting that irregularities appear on the face of the different executions, and such is certainly the case, they are not *void* if founded upon a judgment, but only *voidable*. The vendee under a sheriff's sale is protected by the common law, upon solid grounds of substantial policy, where he is no party to the proceedings, *Goodyer* v. *Junce, Yelv.* 180. A strong case of this kind occurs in 1 *Ves.* 195, where a term of years was sold by the sheriff, while the party was detained in custody under a *ca. sa.* issued in the same suit; and the sale was held good. And by the ninth section of the act of 1705, when a judgment is reversed, which would warrant the awarding of executions, on which lands have been, sold, the lands shall not be restored, nor the sale be avoided, but restitution be made only of the money for which the same were sold.

The only difficulty I have had on the second question, arises from *Edgar's Lessee* v. *Robinson*, as reported in 4 *Dall.* 132, and from the high respect justly due to the character of the two judges who decided it. The facts of the case are not fully stated, nor the particular exceptions made to the parol evidence, which was offered to shew that *James Rowland* had conveyed one third of the premises to *James Robinson* senior, the uncle of the defendants. It is barely stated, that it was objected that no parol proof could be given of a conveyance of real estate, nor generally of any instrument, without previous notice to produce it. The arguments of counsel are wholly omitted, and there must certainly have been other facts, upon which the judgment of the Court turned.

The Court are made to say, " the present defendant, " *James Robinson* jun. is not the party to the alleged deed, " and therefore no notice could be given to him within the " general rule for the production of deeds; nor if he stands " merely in the character of a witness to the deed, is he " compellable to produce it. There is therefore no way of " getting at the title but the one proposed, if the defendant " in an action chooses under such circumstances to conceal " the muniments of the estate."

It does not appear precisely whether *James Robinson*

against whom the judgment was obtained, upon which the sale was had, was the uncle or nephew. If he was the uncle, and in possession of the premises at the time of the judgment and sale, as is stated in the case; or if he was dead, (as may be presumed from a second ejectment being brought) and the nephews came in under him, either as his devisees or heirs at law, then the plaintiff would clearly be entitled to recover the possession upon shewing a judgment, execution, and a sheriff's deed, under the uniform course of our decisions. But if these defendants claimed under a title adverse to their uncle, their right might have been tried in opposition to their uncle's possession, without shewing any conveyance to him from *Rowland*. If the original judgment had been obtained against *James Robinson* the nephew, one of the defendants, he could make no defence, unless he could make out a strong case of fraud in the sheriff's sale. Unquestionably parol proof may from the necessity of the case be given of a conveyance of real estate, when it is fully shewn, that it once existed, and that it was afterwards burned or destroyed; so where it is shewn to have been lost, and every reasonable effort has been used to find it. This species of evidence will always be received with caution and jealousy, on account of the abuses which may be practised under the indulgence. Parol evidence of the contents of deeds is said to be one of the things which the law most abhors. No man shall avail himself of his negligence or laches to entitle himself to the privilege. The Court here are supposed to say, that the defendant *James Robinson*, not being the party to the alleged deed, notice to him was not necessary. But if such circumstances existed in the case as would induce a reasonable mind to presume that he was in possession of the deed, he would certainly be within the general rule entitled to notice to produce it. His being merely a witness to the deed, induces no presumption that the deed was in his custody. Their last observation would seem to suppose, that the deed was in the possession of one the defendants, but that he concealed it as one of the muniments of his estate. This is the very instance put in our books wherein notice is held to be necessary. A man having a deed in his possession, will not be permitted to give the inferior evidence of its contents; but if he can trace it to the

possession of his adversary, and he refuses to produce it on proper notice, he is then allowed that privilege. For nothing else can he do.

The law will make every reasonable allowance in the case of purchasers at sheriff's sales not having the regular chain of title to the debtor. But it will not wholly prostrate its rules to suit their negligence or convenience. Here no single step was taken to entitle the plaintiff below to give parol evidence of the contents of this deed. *Morrow* and his wife might have been applied to; so of different branches of this family of *Charles M'Cormick*, or his personal representatives, if such there were. The recorder's office at *Carlisle* might have been searched, the deed was acknowledged for some purpose. At all events, it was incumbent on the plaintiff below, to show by satisfactory testimony, that he had used all reasonable diligence to procure the deed, before he could be permitted to go into the inferior species of testimony of the contents of it. I much fear, I have been tedious on this head. My great veneration for my valuable and esteemed friends, who have paid the debt of nature, is my only apology. This case appears to me very plain.

It has been said very truly that slight evidence will be sufficient to shew, that one has made use of the name of another in entering an application for vacant lands; and also that the plaintiff below has made out a good case under all the circumstances, independently of the contents of this release. I will not take upon me to deny this assertion. But the question on the bill of exceptions before me, is, not what would be sufficient evidence to entitle the plaintiff below to recover, but whether *Owen Aston* ought to have been permitted to prove that he had seen in the hands of *Charles M'Cormick* between 1770 and 1773, a release from *Morrow* and his wife to *M'Cormick* for the lands in question, duly acknowledged, without laying a previous ground work for the introduction of this testimony. On this question I entertain no doubts, upon established principles of law, founded on the safety and security of property, that the testimony was improperly received; and therefore I am of opinion, that the judgment of the Court of Common Pleas should be reversed, and a *venire facias de novo* be awarded.

1812.

LITTLE
et al.
*v.*
Lessee of
DELANCEY.

BRACKENRIDGE J. It is a struggle in the mind to get over a general rule, where the application of it is mere matter of form, and not of substance. No presumption can arise in this case, that this writing of release has not been enquired after, lest something might appear from it unfavourable to the plaintiffs. For it would be an inutility to have enquired after it, when no notice could have compelled the production of it. The having been recorded at a time when the law did not make it necessary, was but a possibility.

It was the interest of those who might be supposed to hold it, to keep it back, or suppress it. It was the interest of the plaintiff claiming under *M'Cormick* by the sheriff's sale, to produce it if he could. It would have put an end to all difficulty of proving the use by parol evidence; for the evidence of a legal transfer would then exist. But how shall we avoid breaking down a general rule, that a party proving the *existence* of a deed by parol evidence, must go on to shew the loss, or that it cannot be found, before this proof of its existence *can go to the jury.* It goes to the *Court only,* before this is done. The ingenuity of the counsel has not been able to furnish me with a precise answer, and I am at a loss to do it. The proof of a deed having existed, is made to the Court as I have said; and not until evidence is given of the loss, or the not being able to procure the deed, can evidence of the existence go to the jury. That is the rule where there is a *possibility,* however small that may be, of being able to produce it. The question is, whether the hardship in this particular case shall not give way to the general inconveniency of breaking down the rule. I am not able to take the case out of the general rule, by forming an exception; for I cannot say there was not a *possibility* of being able to procure the original, or a recorded copy of this deed of release. The degree of *probability* of being able to procure, cannot be estimated and fixed, so as to form an exception. It must appear and be fixed by proofs of using due means for that purpose. On other points I have thought it unnecessary to dilate, as I concur for the reasons given.

Judgment reversed.