*Sunbury.*

VANHORN *against* FRICK surviving executor of FRICK.

*Monday,*
*June 9.*

IN ERROR.

*Query, whe-*
*ther a land-*
*lord of the de-*
*fendant, who*
*has been active*
*in defending*
*the ejectment,*
*but is no party*
*on the record,*
*can sue out a*
*writ of error,*
*and make the*
*oath, and give*
*the security*
*required by*
*law?*
*In ejectment*
*evidence may*
*be given to*
*shew that the*
*plaintiff arti-*
*cled to sell the*
*land to a third*
*person, and*
*afterwards re-*
*covered it*
*from him in*
*ejectment, for*
*the purpose of*
*shewing a pos-*
*session in the*
*plaintiff.*
*The decla-*
*rations of a*
*person that he*
*was authoris-*
*ed by power*
*of attorney*
*from the plain-*
*tiff to sell the*
*land, are not*
*evidence of*
*such power: it*
*should be pro-*
*duced, or its*
*existence and*
*loss proved.*
*But they*
*might be evi-*
*dence to shew*
*that the plain-*
*tiff had acted*
*such a part as*
*to preclude*
*him in equity from recovering the land.*
*Parol evidence of a trial or judgment is improper; but it is admissible to prove payment after*
*judgment.*

ERROR to the Common Pleas of *Union* county.

*Hall,* for the defendant in error, had moved, at a prior term, to quash the writ of error in this case, because it was not sued out by the plaintiff in error.

The facts were, that the writ of error was sued out by *John Montgomery,* one of the landlords of *Vanhorn,* the tenant; but *Vanhorn,* alone, was the defendant on record. He had taken no active part in the business, but had suffered his landlords, *John Furey,* and *John Montgomery,* to carry on this suit. This was proved by *Mr. Watts,* the attorney for the plaintiff in error. *Montgomery* made the oath required by the act of assembly, and gave security on taking out the writ of error.

TILGHMAN C. J. upon this evidence was of opinion, that the writ of error was well taken out, as *Montgomery* might be considered as the agent of *Vanhorn.*

YEATES J. was of a contrary opinion.

THE COURT being divided, *Mr. Hall* took nothing by his motion.

The case upon the merits was as follows:

*John Frick,* the plaintiff below, in support of his title, gave in evidence a warrant to *Frederick Dorsh,* for 400 acres of land, dated the 8th *August,* 1785, and a survey thereon on the 10th of *October,* 1785, and a deed poll from *Dorsh* to *John Frick,* deceased, dated the 5th *August,* 1785. He then offered in evidence articles of agreement between the said *John Frick,* deceased, and *Jacob Bossart,* dated 10th *January,* 1793, whereby *Frick* agreed to sell this tract of land to *Bossart,* for a certain sum of money, payable by instalments, and also offered in evidence, the record of an action of eject-

1817.

VANHORN
v.
FRICK.

ment, brought by *Frick* against *Bossart*, wherein the said *Frick* recovered from the said *Bossart*, possession of the same land. This evidence was objected to by the defendant, but admitted by the Court; whereupon an exception was taken.

*Vanhorn* the defendant below, claimed under the same warrant and survey which had been given in evidence by the plaintiff. He also gave in evidence a deed poll from the same *Frederick Dorsh*, the warrantee, to *Samuel Quinn*, dated the 1st *May*, 1789, and a deed from the said *Quinn*, to *John Furey*, dated the 11th *November*, 1795, and a patent to *Furey*, dated the 27th *February*, 1796. The parties did not agree that both deeds from *Frederick Dorsh* were genuine. Whether either of them, and which, was forged, was left to the jury. The case which the defendant endeavoured to establish by parol evidence, was as follows. That *Frederick Dorsh*, the warrantee, was a trustee for *John Frick*, *Thomas Gaskins*, and *Samuel Quinn*. That *Frick* purchased *Gaskins*'s share, and then authorised *Quinn* to sell all his interest in the land. That *Quinn* accordingly sold the whole tract to *Furey*, who paid the consideration to *Quinn*, part in money, and part in promissory notes, drawn by the said *Furey*, and indorsed by *John Anderson*. That *Frick*, being informed of the sale, approved of it, and acknowledged that he had given *Quinn* a power of attorney to sell: but, at the same time, expressed his fears, that he should not get his money of *Quinn*, and therefore requested *Furey* to refuse payment of the promissory notes. *Furey*, accordingly, did refuse, and gave notice by public advertisement, that he had received no consideration for the notes; but being sued, and judgment obtained against him, after a trial and verdict, he paid the whole money. To several parts of the parol evidence, the plaintiff objected, and, in some instances, the objections were sustained by the Court below, and the evidence rejected. This occasioned *four* bills of exceptions on the part of the defendant, besides the two exceptions beforementioned. They were all nearly of the same nature, and the substance of the rejected evidence was, " that *Samuel Quinn*, at *Philadelphia*, " in the year 1795, shewed to *James Davis* the draft of seve- " ral tracts of land, among which was the tract now in dis- " pute, and requested him to find a purchaser. Some time " after this, *John Furey* came to *Philadelphia*, and informed

1817.

VANHORN
v.
FRICK.

" the said *Davis,* that he wished to purchase some land on " the *Susquehanna,* that the said *Davis* acted as an agent for " *Samuel Quinn,* who informed him, that he had a power " of attorney from *John Frick,* to sell and convey a number " of tracts of land in *Northumberland* county. That the said " *Davis* saw *Furey* give his notes to *Quinn,* for the *residue* of " the purchase money of the land in dispute ;" (The Court having permitted evidence to be given before of the payment of about 90 or 100 dollars, *in part,*) " and that *John Frick,* " after being informed by the said *Davis,* of the sale made " by *Quinn* to *Furey,* and the payment by *Furey* to *Quinn,* " acknowledged, that he had given to the said *Quinn,* a " power of attorney to sell the lands, but was afraid *Quinn* " would make away with the money, and that he, *Frick,* " would get nothing from him. That *Frick* also acknow- " ledged, that after several trials, *Furey* had been obliged to " pay the money due on his notes."

*Watts* and *Duncan,* for the plaintiff in error.

1. We object to the Court's allowing to be read in evidence the articles of agreement between *Frick* and *Bossart,* because no act of *Frick*'s could make his title better or worse against *Furey.*

2. We object also to the record of the ejectment against *Bossart,* because the defendant was no party to that suit, nor does he claim under *Bossart.*

3. The confession of *Frick* was good evidence even to prove a power of attorney in writing ; because the sale was not made by virtue of a power of attorney, but by virtue of *Dorsh*'s deed. The power of attorney was a matter collateral to the title. The evidence went not only to prove a power of attorney, but an authority which might not have been in writing. The confessions of *Frick* were good evidence also, because they went to prove a fraudulent concealment by him of his title, by which an innocent purchaser was affected. If he objected to the sale, he ought to have declared that *Quinn* had no power to sell ; instead of which, he expressed his satisfaction at it, a short time after the sale. If an agent sells without a written authority, and the principal gives reason to the purchaser to think the title good, equity will confirm the title.

*Sugden*, 66, 67. In *Niven* v. *Belknap*,(a) parol evidence was admitted to prove, that one who had the legal estate had told.another, that he had given a third person power to sell, in consequence of which a purchase was made from that third person. On what principle was evidence rejected, that *Frick* had confessed, that *Furey* had given his notes for the residue of the purchase money, after evidence was given of payment of part? They also cited *5 Bac. Ab.* 48. *Mortgage,* *A.* 2 *Binn.* 245. 6 *Binn.* 328. 5. *Vin.* 522. *pl.* 34, 35.

1817.

VANHORN
*v.*
FRICK.

*Bellas* and *Hall*, contra.
1. and 2. The evidence of the agreement with *Bossart*, and recovery against him in ejectment, were proper to shew that *Frick* retained the possession of the land, except during the time when it was in *Bossart*'s possession.
3. The confessions of *Frick*, as. to his having given a power of attorney to *Quinn*, were inadmissible in evidence. If the power of attorney was in writing, it ought to have been produced; or some account given of it. Before even a copy can be received of an original writing, its existence and loss must be proved. *5 Binn.* 274. 6 *Binn.* 227. 234. 237. If the authority was not in writing, it could not bind the estate. *Act against frauds*, 1 *Smith's Laws*, 389. A parol confession is not sufficient to pass lands, 1 *Smith's Laws*, 393. 6 *Johns*. 21. As to the confessions relative to the notes, they ought to have been produced if they were paid. They also cited *Sugd.* 58. 62. 5 *Vin.* 524. *pl.* 45. 7 *Johns*. 186. 1 *Fonbl.* 164. 270. 1 *Binn.* 450.

TILGHMAN C. J. The defendant's counsel objected to the evidence both of the article of agreement, and the record of the ejectment, on the ground, that as the defendant did not claim under *Bossart*, the transactions between *Frick* and *Bossart* could have no effect on his title. In general this is true. But it was material for the plaintiff who had obtained no patent for the land in dispute, to shew, that *Frick* was in possession; because this possession might operate as notice of his title under the warrant survey and deed poll; or at least it might be sufficient notice, that he had some title, which it

(a) 2 *Johns.* 575.

behoved strangers to inquire into, before they purchased from any other person. I agree, therefore, with the Court of Common Pleas, that the articles of agreement and the record of ejectment, were good evidence, to shew the possession of *John Frick*, deceased.

[Here the Chief Justice recapitulated the facts of the case as before stated.]

As to any thing said by *Quinn*, with respect to his being authorised by *Frick* to sell this land, the evidence was properly rejected. The authority was said to be by power of attorney, and ought to have been produced. But the declarations of *Frick*, made to *Furey*, after the sale, turn on a different principle. These declarations could not be admitted in evidence, for the purpose of proving the contents of a written power of attorney, without first proving the existence and the loss of the power, which in this case had not been done. But they might be evidence, if they tended to shew, that *Frick* had acted such a part, as would preclude him in equity from recovering this land. Now according to *Frick*'s own pretensions, he had received from *Dorsh* the warrantee, a deed of conveyance of the whole tract, which, not being on record, was unknown to *Furey*; so that *Furey* might be deceived by the second deed from *Dorsh* to *Quinn* for the same land. It was, therefore, his duty, on receiving information of *Furey*'s purchase, to disavow the sale, if he meant to dispute it. But instead of disavowing, he confirmed *Furey* in his error by acknowledging, that the sale was made by his own authority. In consequence of this, *Furey* went to the farther expense of patenting the land in 1796. All these circumstances, if well proved, make a case which in equity would bar *Frick*'s recovery. The evidence ought, therefore, to have gone to the jury. I think, too, that the evidence of *Furey*'s paying the residue of the purchase money in his own notes, indorsed by *Anderson*, ought to have been received, and also the evidence of his ultimately paying those notes. The Court permitted evidence, that *part* of the consideration was paid in money. Why then should the evidence of payment of the *residue* be refused? It was proper to reject parol evidence of a trial or judgment. But payment after judgment, was matter *in pais*, and proveable by parol.

Some mention was made, of exceptions to the charge of

the Court. But that charge not being on the record, we can tak- ... notice of it. My opinion, on the whole, is, that the judgment should be reversed, and a *venire facias de novo* awarded.

*N. B.* Judge YEATES, (deceased,) concurred in this opinion, but died before it was delivered.

GIBSON J. concurred.

DUNCAN J. gave no opinion; having been counsel in the cause.

Judgment reversed, and a *venire facias de novo* awarded.