*Saturday,*
December
24th.

### EWING *against* TEES.

A parol contract for the sale of lands, is good under the act of frauds and perjuries, to support an action for damages. So a written contract with an agent, who has merely a parol authority.

*Quære,* whether in any *civil* case the court will grant a new trial, where there has been no motion within the four days.

THIS cause was tried before Mr. Justice *Yeates* at a nisi prius in the present month, when a point was reserved for the opinion of this court.

The facts, according to the report of his Honour, were in substance these. On the 14th *November* 1801 a written agreement was made by the defendant with *Jacob S. Otto* as the plaintiff's agent, to pay the plaintiff 6,366 dollars 67 cents for a tract of land in *Philadelphia* county; 300 dollars to be paid on or before the 17th of the month, possession of the land to be delivered on the 30th, and the balance to be paid on the 22d *December* following, when the deed was to be executed. The agreement was signed by both *Otto* and *Tees.* Upon the trial, a witness swore that on the 17th he went with the defendant to *Otto*, and that the defendant told *Otto* he was sorry for his agreement, as his wife did not like the place, but that he would make him a compensation for his trouble; that. *Otto* replied, he had sent the agreement to the plaintiff, and whether he would be satisfied with it, he could not tell, as he had sold the place for less than he was authorized to do; that the defendant then said, this is the day I was to pay 300 dollars, and if you cannot tell me whether I am to have the place now, I will have nothing to do with it before this man; to which Mr. *Otto* answered, if you do not take the place *now*, you will be sorry for it hereafter. The witness swore that he believed the defendant had 300 dollars in his pocket; but he did not know that he tendered it. Between the 17th and 25th the plaintiff assented to the agreement. On or before the 30th the possession was tendered, and on the 22d *December* a deed; both which the defen-

dant refused. The place was then sold for a less sum, and the present action brought to recover damages for the breach of the contract. The material question of fact was whether the defendant had offered a performance on the 17th, which had been refused by *Otto;* and for this the testimony above mentioned was relied on; but by the plaintiff's counsel it was said to be contradictory and inconsistent, and to be opposed by that of another witness who swore that the reason assigned by *Tees* to him, for not taking possession on the 30th, was simply because his wife thought the place unlucky, and not because Mr. *Otto* had refused to abide by the contract. The point of law, which was reserved at the request of counsel, was whether, under the circumstances of the case, *Otto* should not have had an authority *in writing* from his principal. His Honour charged the jury, that if the defendant had tendered the money on the 17th, which *Otto* had refused, he would have been no longer bound; but that if he was merely using finesse to avoid compliance with his contract, they should find for the plaintiff, which they accordingly did, 283 dollars 21 cents damages.

*Ewing* and *Sergeant* for the plaintiff. The naked question is whether *Otto's* authority should have been in writing. The 1st section of the act of frauds and perjuries, which embraces the first three sections of the 29 *Car.* 2. *c.* 3. relates wholly to conveyances of an *interest* in the lands, &c.; and it requires that, to pass an *estate* in them, the conveyance shall be put in writing and signed by the parties or their agents lawfully authorized by writing. The 4th section of the *English* statute then provides that no action shall be brought to recover damages upon any contract or sale of lands, unless the agreement shall be in writing and signed by the party to be charged therewith, or by some other person by him lawfully authorized. This section is wholly omitted in our act. So that it was the intention of our legislature to leave the action for damages as it stood at common law. A parol agreement for the sale of lands will therefore support an action for damages, still more a parol authority to an agent to agree, which is good even by the *English* statute. *Sugden* 56. *Bell* v. *Andrews.* (a) The most that is required by the 29 *Car.* 2. is that the contract shall be

(a) 4 *Dall.* 152.

1808.

EWING
v.
TEES.

1808.

EWING
*v.*
TEES.

signed by the party *to be charged,* or his agent. Signing by the other party is unnecessary. *Hatton* v. *Gray* (*a*), *Fowle* v. *Free-man* (*b*).

*Meredith* and *S. Levy* for the defendant. The object of the first section of our act was to prevent any part of a contract in relation to lands, from resting upon parol evidence. The writing in question, which if it was any thing, was a sale of the lands, conveyed no interest to either party, for want of a written authority to the agent. It is good for nothing as to the purpose for which it was intended: and therefore if it has any effect, it must be against the intention of the parties. To go by the letter of the act is doing injustice to its spirit. Its terms are something ambiguous; but its evident intention was to cut up altogether parol contracts for lands. So it must have been held in *Nicholson's Lessee* v. *Mifflin,* (*c*) where for want of proof of a written authority to the agent, the plaintiff was nonsuited. *Bell* v. *Andrews* has nothing to do with the point; for the only material question there, was whether the payment of the consideration might be proved by parol evidence. It is essential that the party signing should have some evidence in his hands to shew the acquiescence of the party who does not sign, 1 *Pow. Contr.* 286; and this is not contradicted by *Hatton* v. *Gray,* for there one wrote, and the other signed, which was equal to a signing by both. From the manner in which the reserved point embraces the circumstances of the case, we are however at liberty to press them for a new trial; and although the four days are past, yet where the court see that manifest injustice is done, they will order a new trial of their own accord. There was in fact no contract. The agent's declaration on the 17th *November,* when the defendant must have tendered the money, shews that he had no authority of any kind. What the plaintiff did afterwards is immaterial; for on that day, the defendant, finding that the agreement was without authority, retracted his promise, which he had a right to do. A mere promise does not bind till acceptance by the promisee; and till then, the promisor has a *locus pœnitentiæ,* as in bids at auction, and may retract. 1 *Pow. Contr.* 544. *Payne* v. *Cave.* (*d*) Both must be bound or neither. The plaintiff certainly was not bound, either at the date, or on the

(*a*) 2 *Chan. Ca.* 164.          (*c*) 2 *Dall.* 246.
(*b*) 9 *Ves. jr.* 351.          (*d*) 3 *D. & E.* 149.

-17th; the promise was therefore destitute of mutuality, and the defendant was at liberty to decline when he did. *Cooke* v. *Oxley*. (*a*)

1808.

EWING
*v.*
TEES.

*Reply.* The point is whether under the circumstances there should have been a *written* authority, not whether there should be a new trial. The merits were decided by the jury; and even if they were with the defendant, there is no instance in which a new trial has been granted by the court, after the four days have passed without a motion. [SMITH J. In the *King* v. *Holt*, 5 *D. & E.* 438. the court said, they would themselves take an objection to the verdict, if they thought substantial justice had not been done.] That was a criminal case, and the opinion of the court is confined to such cases. It was founded upon the *King* v. *Gough*, where *Buller* said the proceeding was irregular. At all events, it is confined to cases of extreme and palpable injustice; of which there is not a trace here. First, as to the locus pœnitentiæ; it is gone the instant the contract is reduced to writing, or is in part performed. 1 *Fonbl.* 171. Then as to the refusal by the agent and his want of authority; it is plain the jury did not believe the defendant's witness, and that they thought the defendant was practising a trick. *Otto* told him to take the place *then*, and the plaintiff assented the instant he heard of the agreement. He tendered the possession and the deed; he recognised *Otto* for his agent from the outset, and therefore it did not lie with the defendant to deny him. When a party offers to perform, no case is to be found where equity has inquired whether he was bound. And hence the words *circumstances of the case;* for under the circumstances we contended that no authority at all was necessary, as the acts of the agent were adopted. Then as to the statute; all that is necessary in *England*, is that the party to be charged, has signed. *Fowle* v. *Freeman* is explicit, and has not been answered. So is *Hatton* v. *Gray*, for the writing was not a signing. *Hawkins* v. *Holmes* (*b*). But in this state, the contract is attended by all its consequences at common law, except passing the estate; so that it is not necessary in this action, that there should be a signing by either party. *Nicholson's Lessee* v. *Mifflin* was an ejectment for the land, and therefore writing was essential.

(*a*) 3 *D. & E.* 649.        (*b*) 1 *P. Wms.* 770.

VOL. I.                       3 M

1808.

Ewing
*v.*
Tees.

Tilghman C. J. This cause was tried before judge *Yeates* at nisi prius in *December* 1808; and on the trial a point was reserved, on which it is now brought before the court.

The action was brought to recover damages for breach of a written agreement, by which the defendant engaged to purchase a tract of land the property of the plaintiff. The agreement was signed by the defendant and by *Jacob S. Otto*, who was alleged by the plaintiff to be his agent. It was objected by the defendant, that supposing *Otto* to be the agent, it was necessary that his authority from the plaintiff should have been in writing. The point reserved by the judge was " whether under " the circumstances of this case, *J. S. Otto* should not have " been authorized in *writing*, to make the contract on which " the suit was brought to recover damages." The facts in the cause were to be decided by the jury, taking it for granted that the authority need not be in writing.

The act of assembly " for prevention of frauds and perju- " ries," on which this point arises, provides that " all leases, " estates, interests of freehold or term of years, or any uncer- " tain interest of, in, or out of, any messuages, manors, lands, " tenements or hereditaments, made or created by livery and " seisin only, or by parol, and not put in writing, and signed " by the parties so making or creating the same, or their agents " thereunto lawfully authorized by writing, shall have the force " and effect of leases or estates at will only, and shall not either " in law or equity be deemed or taken to have any other or " greater force or effect, except leases not exceeding the term " of three years from the making thereof."

It is evident that this provision extends only to the *estate* intended to be passed. No *estate* in lands shall be conveyed by one person to another, unless the agent is authorized by wri- ting. But it is one thing to convey an estate, and another and very different thing to make an agreement that you will convey it. It might be good policy to establish certain solemnities, without which the title of land could not be transferred; because the peace and happiness of society are promoted by the clear- ness and facility with which the titles of real estate may be as- certained, and by preventing those frauds and perjuries which would inevitably take place, if after a great length of time it was permitted to establish a title by parol evidence only. Whereas, an action for damages for not performing a contract,

is of much less moment. The jury may give such damages as, under the circumstances of each case, appear reasonable, and these damages will often be very small; and there is less danger of perjury, because those actions are limited, so that they must be commenced in six years. I should think the case sufficiently clear, if it was taken upon the act of assembly, without any other consideration; but it is still clearer, when we turn to the *English* statute of frauds and perjuries, 29 C. 2. c. 3. It is plain that our legislature had that statute before them, when they framed the act in question; because that part of our law which I have recited, is copied very nearly verbatim from the English law. But there is a total omission of the fourth section of the English statute, which enacts, that no action shall be brought to recover *damages* upon any " contract or sale of " lands, tenements, or hereditaments, or any interest in or con- " cerning the same, unless the agreement on which it is brought, " or some memorandum or note thereof, shall be in writing, " and signed by the party to be charged therewith, or some " other person thereunto by him lawfully authorized." It is impossible that this omission should have been accidental. It must have been intended to leave the common law unaltered, as to the redress which it affords for breach of a parol contract, by recovery of damages. Agreeable to this construction is the sentiment expressed by this court, in the case of *Bell* v. *Andrews*, 4 *Dall.* 152.; although the point now in contest is different from that which was then before them. The same construction has been given in several cases at nisi prius, in which damages have been recovered on parol contracts for sale of lands.

But the defendant's counsel have contended that if the opinion of the court on the reserved point is against them, they ought to have a new trial; because they proved to the jury that *Otto* had no authority to make the sale at the time the writing was signed, nor at the time when the first payment was to have been made by the defendant. In the first place it must be remarked, that no motion for a new trial was made, and the four days for making it are out, so that no motion can now be received. It has been urged, that still, if the court perceive by the judge's report of this case, that manifest injustice has been done to the defendant, they will take the matter up themselves, and order a new trial. All that I shall say at present is, that

1808.

EWING
v.
TEES.

it must be an exceedingly clear error indeed that should induce me to interfere, after the four days have expired without a motion for a new trial. Nor will I commit myself by saying, whether or not I should think myself justified in doing so, in any case of a *civil* nature. It is enough that in the present case, I am by no means satisfied that any injustice has been done to the defendant. There is no proof that, as his counsel contend, he tendered the money due for the first payment, and that *Otto* refused to receive it because the plaintiff had not ratified the contract; nor even that he had the money ready to tender. The testimony of the witness, on whom he relies to prove that *Otto* said he had no authority to make the sale, is not free from considerable inconsistency. It was established beyond doubt, that as soon as the plaintiff was informed of the contract, which was not more than ten days from its making, he gave his assent to it; that possession was offered to the defendant on the thirtieth of *November*, the day appointed for that purpose; and that at the time fixed for making the last payment, the plaintiff tendered the defendant a deed of conveyance in fee simple. Thus every act of the plaintiff tended to a faithful performance of his part of the agreement; while the defendant's whole conduct evinced an intention to fly off. And what has great weight with me, judge *Yeates*, before whom the cause was tried, and who had a better view of the evidence than we now have, is well satisfied that injustice has not been done by the verdict. My opinion therefore is, that a new trial should not be granted.

YEATES J. concurred in opinion with the chief justice, that it was not necessary that the authority of the agent should be in writing. He went at the same time into the merits, for the purpose of shewing that no injustice had been done by the verdict, and that even if the court could indulge the defendant with a relaxation of the rule, he was not entitled to a new trial by the evidence.

SMITH J. expressed the same opinion upon the point reserved; but he thought that inasmuch as the question was so reserved as to let in " the circumstances of the case," and upon those circumstances there was so little evidence of any contract at all, that manifest injustice had been done to the defendant. His Honour said, " Had the

point reserved been worded in the usual form, I think I should have been compelled to give my voice in favour of the plaintiff. But the words " under the circumstances of the case" have some meaning, and were inserted for some purpose. If it was not intended thereby to empower the court to investigate and decide on the merits, they were worse than nugatory; they tended to perplex. I am glad therefore that, if I have discovered during the course of the argument that injustice has been done, I am at liberty to give my voice for a new trial, although it has not been moved for within the four days. More than one of the court during the argument said that a motion ought to have been made; but on examination I rejoiced that the strong inclination of my mind, the justice of the case, was not fettered by form. Let it not be said that this relaxation of the rule is confined to *criminal* cases. The case of *Smith* v. *Gilman, Stra.* 995. *Birt* v. *Barlow, Doug.* 162. and the reasoning in other cases, shew that there is no distinction between *civil* and *criminal* cases, nor ought there to be any. I am therefore of opinion that there ought to be a new trial."

BRACKENRIDGE J. On the reserved point I have no doubt. Parol evidence may be given of an agreement to convey real estate, upon an action on the contract, so as to entitle to damages; this not being within the act of frauds and perjuries. Nor is there any thing in the expression " circumstances of the case," that will enable us to take them into view in considering the point reserved. But whether the circumstances of the case may be taken into view at this stage, a new trial not having been moved for within the four days, is another matter. It is a rule, that although the motion cannot be made after the four days, yet the court are not prevented by this rule from granting *of themselves* a new trial, if from a view of the evidence they see reason for it. But I am not prepared to say that this verdict is so palpably against the evidence as to make it clear that a new trial ought to be granted; and I concur in refusing it.

New trial refused.