# Vin E. Williams and W. A. Griffith *v.* Martha J. Milligan, Appellant.

*Husband and wife—Evidence—Ejectment—Equitable defense.*

In an action of ejectment to recover land purchased at sheriff's sale on a judgment against the husband, in whom was the legal record title, and where the wife of the defendant in the execution, who had a separate estate, is in possession of the property and claims it on the ground that she had furnished the purchase money under an agreement with her husband that the deed should be made to her, and also on the ground that her husband had subsequently made a deed of the property to her, which deed she had destroyed, and also that he had agreed to make another deed to her, in consideration of money which she had furnished for improvements, the evidence to sustain the defendant's contention must be clear and convincing, and if the judge, acting as a chancellor, is of the opinion that it is insufficient to prevail against the legal title, he should give binding instructions to the jury to find for the plaintiff.

Argued Oct. 11, 1897. Appeal, No. 31, Oct. T., 1897, by defendant, from judgment of C. P. Westmoreland Co., May

Term, 1893, No. 494, on verdict for plaintiffs.　Before STER
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN
and FELL, JJ.　Affirmed.

Ejectment for a tract of land in Madison borough.　Before
DOTY, P. J.

The facts appear in the opinion of the Supreme Court, and
by the charge of the court below which was as follows :

This action is ejectment.　The suit is brought by the plaintiffs
to recover the possession of a lot of ground situate in Madison
borough, Westmoreland county.　To sustain a verdict upon the
part of the plaintiffs reliance is placed upon a paper title.　Both
parties claim title from the same common source.　It appears
from the records that were offered in evidence that Strawn and
wife October 8, 1877, made a deed of conveyance to Dr. J. D.
Milligan ; this deed was not recorded until some years after-
wards, August 22, 1888, and subsequently, on June 7, 1892, a
judgment was recovered in this court by one J. L. Davidson
against J. D. Milligan.　This became a lien upon the property
providing the property belonged to Dr. Milligan as the deed on
record shows.　This judgment was followed by an execution,
which was issued the same day the judgment was obtained, on
June 7, 1892.　There was a sale by the sheriff on September 3,
of that year, and at that sale the property was sold to the plain-
tiffs in this action.　The deed of the sheriff, in pursuance of the
sale, was acknowledged in court on September 26 of that year,
and the writ of ejectment showing the possession of the property
in the defendant is offered.　If the case stopped at this point, of
course there would be plain sailing.　There would be no ques-
tion either of law or fact for the court or jury to determine, the
plaintiffs showing a complete paper title—a title that would jus-
tify the recovery of the possession of this property.　A title of
this kind is not to be lightly set aside, where the title is com-
plete, and seems to be regular and perfect upon its face.　It re
quires strong evidence—clear, unequivocal, explicit testimony, to
set aside a paper title of this kind by parol proof.　The case does
not stop at this point.　The case as it was developed in your hear-
ing is full of points—some of them not without difficulty, but
principally questions of law, and it is our duty to decide these

questions, and it is our duty to decide the important question involved in this case and relieve the jury from all responsibility. As there are no questions of fact to submit to the jury, it may not be necessary to enlarge, but very briefly we shall try to give our reasons for undertaking to determine this issue. The defendant sets up a resulting trust. The contention upon the part of the defendant is, that this property never belonged to Dr. Milligan; that he simply bought as the agent of the defendant, and that there was a fraud committed against her by Dr. Milligan taking the title in his own name; in other words, that she had furnished the purchase money, and by virtue of the payment of the purchase money at the inception of the title that a trust arose in her favor which would entitle her to recover against Dr. Milligan and any one standing in his shoes. These plaintiffs were purchasers at the sheriff's sale; they bought under a judgment; the defendant at that time was in possession of the property, and the contention is that the plaintiffs required no further notice than the notice that was conveyed to them by the fact that she was in possession of the property. It is also contended upon the part of the defendant, that there was a parol sale; that she was put in possession of the property, and that this was followed upon her part by making extensive and valuable improvements, and that it would be inequitable to rescind a contract of that kind; and then it is further contended that there was a deed for this property actually delivered to the defendant; this deed was retained for a few days and afterwards destroyed by the defendant. These defenses in the law are what are known as equitable defenses. They appeal directly to the court. It is said that the court sits here as a chancellor. The conscience of the court must be satisfied that the evidence introduced is of the character that we have said the law requires—clear, explicit and unequivocal evidence bearing upon every element that goes to make up the claim of the defendant in this action. Before speaking in regard to these matters of law, it is sufficient to say that the defendant relies upon her own testimony as to the payment of the purchase money. Her contention is, that she paid at the time this property was purchased, the sum of $800; the transfer of the deed and the payment of the money, we believe, occurred in Greensburg, some distance from Madison, where the parties lived, and on the re-

turn of the husband she paid another sum of $120, and it is contended, that in addition there was $225 paid; that amounts to something like $1,100; the consideration of the deed being $1,900. The defendant further contends that sometime prior —perhaps in the spring of 1877—she loaned her husband the sum of $1,100 for the purchase of the property adjoining this Strawn property and known as the Keffer property, and that the arrangement was, when that property was sold, that the amount realized from the sale of the Keffer property should be applied to the purchase of this property, and thus she contends that she paid the full consideration and more than paid the full consideration for the purchase of this property. She contends further that she has been in continual possession of this property since the time of the purchase or shortly afterwards; she remained in exclusive possession of the property certainly from 1892 until the time of the sheriff's sale. We do not recall now exactly what time it is alleged that the husband left the abode of his wife and went elsewhere to board. The defendant gave notice at the sheriff's sale, and that fact is not disputed, that she was the owner of this property; and there is evidence that is clear and unequivocal—it is enough to satisfy our mind—that she had a separate estate of her own. This estate, according to the testimony, was derived in part from the estate of her deceased father and from a former husband, and that was sufficient and more than sufficient to pay the consideration money upon this property; and then she contends that there was a delivery of the deed carrying out this trust; that this deed was delivered sometime in August, 1880, which deed, as we have before mentioned, she alleges that she destroyed on the Monday after it was delivered—having received it upon Saturday, about August 15, 1880.

It is contended by the plaintiffs, on the other hand, that the deed was made, as the record shows it was made, to Dr. Milligan on October 8, 1878; that it was held by him in this shape until the sheriff's sale on September 3, 1892. It is contended that the full consideration money was paid by Dr. Milligan; that the property was assessed in his name continuously from 1877 until the sale occurred. There is evidence that taxes were paid by Dr. Milligan; we do not know that there is evidence that he paid the taxes for every year, but certainly there

is testimony that he paid them during that period. The property was insured by him immediately after the purchase, according to the uncontradicted evidence, and that insurance was continued down until the property was disposed of by the sheriff. There is considerable evidence as to improvements made. It is contended by the defendant that she made extensive improvements, amounting to something like $1,900. It appears that there was an addition put to this property in 1880, and the contention of the defendant is that she paid all this money for the improvements. She contends that she had sold some of her property prior to that time—in the spring of 1880, and that a large sum of money came into the hands of her husband, and that he appropriated by her direction or with her consent for the improvement of this property something like $1,900. The plaintiffs contend that all the men that were employed were employed by Dr. Milligan and paid by him to do the work and that he paid for all the materials that were furnished for these improvements.

It is contended by the defendant that she not only had a large estate, as we have already said to you, but her husband was without any estate, and as to that, it is alleged upon the other side that he had a very extensive and lucrative practice—principally after the purchase of this property, if we recollect the testimony accurately, but there is also evidence that at the time of the purchase of this property or about that time, he borrowed the sum of $375; and there is also evidence that he secured an indorser to go upon a note for the amount; the money is said to have been gotten from a man named Woods, in Fayette county, although the evidence, as we recollect it, fails to show that the money was actually obtained upon that note; but the note bears evidence of having been given at that time, and as the evidence seems to show, is now in the possession of Dr. Milligan. That note was paid by him according to the uncontradicted testimony. There is also evidence that this Keffer property was purchased before the Strawn property, and purchased in Dr. Milligan's name and with money borrowed from his wife; and some declarations upon the part of the wife that she didn't own this property. This is earnestly denied by Mrs. Milligan; she alleges that when she spoke to the assessor that she had reference only to her personal property. You will

remember these declarations. Then it is in evidence that she had knowledge of this deed, that is, the fact that the deed was in her husband's name as early as December, 1877, or about that time. She certainly knew it in 1880, according to her own testimony, and perhaps in December, 1877.

This is about the contention upon the one side and the contention upon the other. As we have said, before defendant can recover on the ground of resulting trust, there must be clear and unequivocal evidence of every element that is necessary to make out her claim ; that is, there ought to be that kind of evidence to show that there was an actual agreement entered into at that time between her husband and herself, and there ought to be that kind of evidence to submit to the jury and to satisfy the conscience of the court that her money was actually applied in the way that she contends for the purchase of this property. We are not satisfied that there is that clear, unequivocal evidence which the law seems to require. There is no doubt that Mrs. Milligan testifies positively to the arrangement; that is, she swears that her husband was to buy this property and that she was to furnish the money. In that regard, as we view the testimony, and understand it, she is absolutely without corroboration. There is no other testimony that is introduced in the case that tends to corroborate her statement in this regard. When we come to the application of this money there is no positive testimony at all. There is nothing in the facts established inconsistent with the theory that is maintained here by the plaintiffs in this case. No one who was present, when that money was actually paid is here to testify—to satisfy the court that it was this money of Mrs. Milligan's that was delivered at that time. So far the application of the purchase money is concerned defendant's contention is without testimony to sustain it; and so far as the arrangement with her husband is concerned her statement is without corroboration. There is evidence to corroborate her upon the fact of an independent estate, but outside of that there is little evidence of a clear and unequivocal nature that ought to justify a court in entering a decree to set aside a written title. There was some testimony introduced here to show that there were certain papers offered to Mrs. Milligan. We refer to the testimony of W. C. Errett and Charles Walters, who say that in August, 1880, or about

that time, they were present at an interview between Dr. Milligan and his wife, on which occasion the doctor said that the papers belonged to his wife, " they are yours ; take them," or language substantially to that effect; and the testimony of Mr. Walters in addition being that Dr. Milligan declared that he made a deed and she didn't want it. ` But there is nothing in that testimony, as we view it, that would clearly show that that deed was made in pursuance of the payment of the purchase money three years before. This was in August, 1880. The testimony, as we view it, does not clearly tend to corroborate the statement of Mrs. Milligan that a deed for this property was delivered to her at that time or that she had paid the purchase money.

For these reasons we are convinced that the evidence is insufficient to establish a trust; that the evidence is not of the character that would justify the court in entering a decree setting aside that written paper, and the case of the defendant in this regard, according to the opinion of the court, is not a sufficient answer to the title which is introduced upon behalf of the plaintiffs. We might say the same thing substantially in regard to the alleged parol sale. It is contended that she was in possession of this property and that she had made a purchase of the property and went on and made valuable improvements, but the evidence is not of the character that ought to establish a parol purchase of real estate ; and this seems to be about all that need be said to the jury at this time. It is our opinion, under all the evidence, that your verdict ought to be for the plaintiffs for the premises described in the writ, with six cents damages and costs and we so instruct you.

Verdict and judgment for plaintiffs. Defendant appealed.

*Error assigned* among others was the charge of the court, quoting the whole charge.

*John S. Ferguson*, with him *Edward S. Robbins, John E. Kunkle, H. P. Laird* and *John B. Keenan*, for appellant.—Plaintiffs had not the rights of a purchaser of the legal title against the equitable owner, and they were certainly bound by express notice of the equitable title given at any time before their own title was acquired: Sill v. Swackhammer, 103 Pa. .7 ; Moyer v. Schick, 3 Pa. 248.

Where a husband has his wife's money in his possession and invests the same in real estate, taking the title to it in his own name, a resulting trust arises in favor of the wife: Heath v. Slocum, 115 Pa. 549; Morris v. Ziegler, 71 Pa. 450.

An estoppel can only be pleaded by one who was adversely affected by the act which constitutes it.

All the destroying in the world without intention will not revoke a will: Cheese v. Lovejoy, L. R. 2 Prob. Div. 251.

*James S. Moorhead*, with him *D. S. Atkinson, John M. Peoples* and *John B. Head*, for appellees, cited Church v. Ruland, 64 Pa. 432; Gilchrist v. Brown, 165 Pa. 275; Reno v. Moss, 120 Pa. 68; Hess v. Calender, 120 Pa. 152; Young v. Senft, 153 Pa. 352; Beringer v. Lutz, 179 Pa. 1.

OPINION BY MR. JUSTICE McCOLLUM, January 3, 1898:

It is conceded that the defendant had a separate estate when she married her second husband, and that it was not founded upon or enlarged by any gift or contribution from him before or after their marriage. In October, 1877, he purchased the property described in the summons and received a deed of the same which was duly recorded on August 23, 1888. Very soon after he purchased the property he took possession of it, and he and his wife resided on it while they lived together. It was assessed to him and he paid the taxes and made improvements upon it. In 1892, while the record title was still in him, the property was sold on a judgment against him, and the plaintiffs were the purchasers of it. Their suit for the possession of it is based on the sheriff's sale and deed to them. The first and principal contention of the defendant in answer to the suit is that she furnished the money for the purchase of the property under an agreement with her husband that the deed of it should be made to her and that he, in violation of the agreement, had the deed made to himself. Her next contention is that she has the legal title to the property by virtue of a deed which she says her husband made and delivered to her on a Saturday in August, 1880, and which she says she destroyed on the following Monday. These contentions are supplemented by another, which is that two days after she destroyed the deed peace was declared between the grantor and grantee, and that they then

made a parol agreement by which she was to furnish the money required to make some improvements on the property, and he, on the completion of the improvements, was to make another deed of it to her. Neither claim of the defendant is available as a defense to the suit unless it is sustained by clear, unequivocal and convincing evidence. The question, therefore, for the consideration of the court was whether the defendant's evidence was sufficient to sustain her several claims, or either of them. In cases of this kind the judge acts as a chancellor, and it is his duty to carefully consider the evidence submitted to sustain the alleged equitable defenses, and if in his opinion it is insufficient to prevail against the legal title he may and ought to instruct the jury to find for the party having such title. The decisions of this Court sustaining this view of the evidence required and of the duty of the judge in a case like the one under consideration, are numerous and uniform. Hess v. Callender, 120 Pa. 138, was an action of ejectment involving an equitable title based on an alleged parol gift of the land to the defendant by his father. In delivering the opinion of the Court our Brother WILLIAMS said : " The duty of a chancellor is not in doubt. He must scrutinize and weigh the evidence for himself. If the facts set up are sufficient in character and are clearly and satisfactorily proved so that he is persuaded that in equity and good conscience a decree should be made, he will enforce the contract. But specific execution is not of right but of grace. If one has a legal right on which he can rest his title to relief, a court of law is his proper forum. It is because he has no right at law to the relief he seeks that he comes into a court of equity. He must come with clean hands ; his application must be made with reasonable promptness ; it must be conscionable ; it must rest upon facts that are made to appear by proofs that are clear, satisfactory in character, and convincing. If such a case is not presented it is unwarrantable abandonment of duty for a judge to turn a case over to a jury, and do by means of their verdict what as a chancellor he would refuse to do." See also the recent case of Gilchrist v. Brown, 165 Pa. 275.

Were the defenses relied on in the case at bar sustained by the evidence applicable to them ? The learned judge of the court below was of the opinion that they were not, and he accordingly instructed the jury to find for the plaintiffs. The real question

presented by this appeal is whether this instruction was erroneous. We are satisfied from a careful examination and consideration of all the evidence that it was not. There is no corroboration of the testimony of the defendant relating to the alleged agreements with her husband respecting the purchase of the property, the payment of the purchase money, and the payment for improvements; besides, her testimony in regard to the payment of purchase money, is not in accord with the testimony of disinterested witnesses showing that the first payment on account of it was made by her husband on October 8, and that the next payment was made by him within a week from that time, and also showing that $375 was the amount of the first payment and the exact amount of the loan he made a day or two before, and that $500 was the amount of the second payment and the precise amount he loaned on October 12. The correspondence in time and amount between the payments and the loans is significant. An inference that the payments mentioned were made with the husband's money might well be drawn from it. The addition and other improvements made upon the property in 1880 were supervised and directed by the husband. He ordered and paid for the materials, and employed and paid the workmen. Neither the materialmen nor the workmen dealt with the defendant or received from her any instructions in regard to the materials furnished or the work done.

The assertion by the defendant that she acquired the legal title to the property by virtue of a deed from her husband in 1880 appears first in her abstract of title filed on May 10, 1894. The written notice given by her at the sheriff's sale on September 26, 1892, contained no allusion to a deed from him to her. It stated her claim as founded upon her payment of the purchase money and represented her husband as having fraudulently and in violation of his promise taken the deed of the property in his own name. If he had conveyed the property to her twelve years before the sheriff's sale we might reasonably suppose that she would have mentioned that fact in her notice of claim. Her omission to do so is a circumstance to be considered in connection with the testimony relating to her claim of a legal title founded upon a conveyance of the property to her by her husband in August, 1880. The testimony to sustain a claim of this nature must be clear and convincing. If it

is not, a jury should not be allowed to guess from it that a deed was made, delivered, accepted and destroyed. Proof of all these matters being essential to the maintenance of the claim of a legal title slight and doubtful evidence of them or either of them is insufficient. The testimony of the defendant on this branch of her defense is vague, unsatisfactory and inadequate, and has no substantial support or corroboration in the testimony of Errett or Walters. The former testified that in 1880 he heard the defendant's husband say to her that she should take charge of certain papers, as they were hers, and the latter testified that the papers "looked like deeds." Neither of these witnesses testified to any inspection of the papers or to any knowledge of their contents. The defendant testified that the deed she claimed to have received from her husband was written by Henderson and witnessed by him and Miller, and that he took the acknowledgment of it, while he testified that he had no recollection of writing, witnessing or seeing such a deed, although he distinctly remembered that he wrote and took the acknowledgment of a deed for her husband for the Keffer property about the time he sold it. No person except the defendant testified to having seen such a deed, or to any declaration of her husband that he had conveyed the Strawn property to her.

We are clearly of the opinion that the evidence in the case is insufficient to sustain the defendant's contentions, and that the learned judge of the court below did not err in so holding. All the assignments are therefore overruled.

Judgment affirmed.